Oral argument not to exceed 15 minutes per side. Ms. Putnam for the appellant. Have you given the clerk the time you would like to reserve for rebuttal? I have not, Your Honor. I would like to reserve 5 minutes for rebuttal. Thank you. Good morning. On behalf of the appellant, Pauline Shuler, I'm Rachel Putnam.  And I would like to begin by thanking Your Honors for granting our request for oral argument on this matter. This appeal arises from the granting of a motion to dismiss filed by the defendants against Ms. Shuler and the subsequent denial of Ms. Shuler's motion to alter or amend. I would like to ask Your Honors if you will have any questions before I begin my argument specific to the issues that we have raised in our briefs. Go ahead. Do you have one? I just have one quick one. I was going to relieve her of that, but I think you need to begin. Just very briefly, and I apologize for not knowing this, what exactly does the record show in terms of notice in the record about the do not administer heparin or heparin allergy in terms of relative to what the nurses would have in due course had available to them to look at? Certainly, Your Honor. To begin with, there is no record as of yet due to the granting of a motion to dismiss. However, I believe that the defendants have conceded in their brief that Ms. Shuler did repeatedly refuse and reject the treatment and the administration of heparin. That has been conceded. I believe it's also been conceded by the defendants that Ms. Shuler did, in fact, receive heparin on more than one occasion. I'm sorry. I apologize for the question. No, no, no. Go ahead. The issue, I believe, and I hesitate to say that it's a simple one, but I believe that it is, under Tennessee law, there is a cause of action that is separate and distinct from a medical malpractice action, and that is the cause of action of a medical battery. The distinguishing and fundamental difference in these two causes of action is that a medical battery is an intentional tort, whereas a medical malpractice claim sounds and involves claims of negligence. Ms. Shuler's assertion and rejection and refusal to receive heparin during the course of her treatment precludes this court and the district court from ever considering whether or not there was a deviation from the standard of care, whether or not the defendants exercised good, sound medical judgment. Under Tennessee law, a medical battery is defined as an unauthorized procedure. The district court did not have the benefit of the ABEDA versus HCA healthcare opinion when it granted the defendants' motions to dismiss and denied our motion to alter or amend. The ABEDA opinion was released just weeks after the denial of our motion to alter or amend. The importance of the ABEDA opinion in this case is that the district court, in granting the motion to dismiss, specifically noted that the Tennessee Supreme Court had not yet addressed or defined what qualified as a procedure or a treatment, and specifically the district court seemed to struggle with whether or not the administration of a medication qualified as a procedure and or a treatment. Well, the court relied effectively on Cary, the Tennessee Court of Appeals. It did, Your Honor. What is wrong with Cary? I believe Cary is not on point, Your Honor, because Cary involved a patient voluntarily administering themselves, drops into their eyes following a medical procedure, and the issue in Cary was did the patient receive sufficient information from the doctor to be aware of the risks that were involved in administering that medication. So it became an issue of informed consent versus, in this case, Ms. Shuler specifically stating, I do not want to receive heparin. Do not inject me with heparin. And in preparing for this, a saying kept coming to my mind, which is no means no. There's no expert opinion that is needed to explain what the word no means. Once a patient says no to a medical provider, it precludes that medical provider from even having an opinion as to whether or not that is what should happen. The defendants seem to want to suggest that because a patient gives an overall consent to a procedure, that that therefore precludes them from limiting or withholding their specific consent to a component of that treatment. And I submit to Your Honors, that is not the intent of our laws in the state of Tennessee. The case... In other words, simply walking into a hospital and getting to a hospital bed does not permit the hospital or anybody affiliated with it to do whatever they want. Correct, Your Honor. And in the case of Church versus Perales, the court specifically states that patients do not surrender their right to personal autonomy, and they do not surrender their right to control the different components of their medical care because they have given a consent to a different procedure. Ms. Shuler obviously consented to undergo a heart catheterization, but that did not preclude her from specifically withholding her consent to the administration of Heparin. The district court, in their opinion, stated that we argued that she had not consented. Well, what we argued was not just that she had not consented, but that she had specifically refused to receive Heparin. And no means no. And the fact that they were able to do that only when she was under the influence of anesthesia goes to the point of she was able to protect herself while awake and when they attempted to administer it to her despite her prior rejection of that medication. But they totally disregarded her refusal to receive that medication when she was under the influence of anesthesia. And that is a medical battery. It was an unauthorized injection. It is an unauthorized touching that occurred to Ms. Shuler. They also argue in their brief that expert opinion would be needed to explain what was alleged or the outcome or the damages that Ms. Shuler experienced. Yeah, we appear to be back on. Probably about ten seconds. I'm sorry for the interruption. We should be good. Let's try it now. Sorry. Good morning. May it please the court, my name is Buck Welford and I represent the Defendant's Cardiovascular Surgery Clinic, Dr. Garrett and Dr. Proctor. But with the permission of our co-defense counsel, we submitted a joint brief and I'll be making the argument on behalf of all the defendants in this case. The first point I want to make is that while we have conceded that the posture of this case being a motion to dismiss is that the plaintiff is entitled to all reasonable inferences from well-pled allegations, we haven't conceded factually what Ms. Putnam suggested. So I just wanted to make that clear. Now, Ms. Putnam, the plaintiff, has conceded several important points in the briefs that have been filed in this case that I do want to address. First is that while the battery issues the focus on appeal, in the trial court, this case medical issues predominated. That was the primary basis for Judge Anderson's dismissal in the first place, which is that medical issues predominated in the case and that they called for expert testimony. And now we are dealing only with the battery issue on appeal. I think that the law is clear and the plaintiff even concedes it that medical battery in Tennessee is described as a very narrow area of the law. In fact, the Abayeda case that was relied upon heavily by the plaintiff says that. It is a very narrow area of the law. The emphasis in Tennessee on battery cases is twofold. One is the type of medical battery that the plaintiff is complaining of here, which would not require expert testimony. An unauthorized procedure. The second and the more commonly litigated battery issue concerns informed consent. Why is informed consent a battery issue? It is not a question, is it, of whether you were sufficiently informed as to a medical battery. It is not a question of whether you withdrew consent or absolutely refused consent to a procedure. It has nothing to do with what information you were given, does it? Well, it is an excellent question because most jurisdictions say exactly what Your Honor has posited. Tennessee does not. Tennessee is in a minority of jurisdictions and the case law makes this clear repeatedly. A minority of jurisdictions which find that if you do not obtain the informed consent of a patient to a procedure, then the physician's actions are considered and become a battery. Most jurisdictions just treat that as a negligence claim. But doesn't that beg the question? Because the issue is not whether you fall in that narrow category that Tennessee recognizes. The issue is whether there was an unauthorized action for which consent was specifically revoked. Isn't that the issue of your case? It is the issue, but the informed consent line of cases in Tennessee are relevant to this point because the analysis in Tennessee, because of the way that they define it, informed consent and medical battery cases are two sides of the same coin. For example, there is a case, Your Lob vs. Select Specialty Hospital, 2011 Westlaw 255281, which is a medical battery case in 2011, and the court analyzed that by reviewing informed consent battery cases and stated we recognize that the court in one of these cases was analyzing an informed consent claim rather than a medical battery claim. However, we believe that the court's reasoning is persuasive when applied to a battery claim as well. I'm sorry. Isn't that a case that has to do with the minority view in Tennessee that informed consent may also constitute medical battery? For our purposes, that's an also-ran. Because all we're asking you is did you have authority to do the procedure that you undertook or is the allegation in the complaint that this plaintiff expressly withdrew consent? Your Honor is correct that that's the issue in this case. I make the point about the comparison simply to demonstrate that the informed consent line of cases and the discussion of battery in those contexts are considered by the courts to be relevant in the course of analyzing this issue, but you're right. How does that impact your case? It impacts our case because in informed consent cases, there is some type of consent given and then the analysis focuses on the consent. In the medical battery cases... The analysis focuses, I would assume... On the adequacy of the consent. Sure. What was informed? Did you tell the patient if you accept this proposed course of treatment, this, that, and the other thing might happen, but forget to tell them about the bad thing? That's precisely correct. That's not the situation here. If this isn't medical battery, what is? I'll be very honest with you. I'm strongly inclined to reverse. Somebody says, don't do that. Now, it may be somebody who's Christian Science and believes in the efficacy of prayer over getting a life-saving injection, but if this isn't a medical battery, when would there ever be a medical battery? Well, there have been cases of medical battery that involve situations where the underlying procedure, which brought the patient to the caregiver who's being charged with battery, is not authorized. That is when you have a medical battery. Let's take it out of the passive voice and put it in the active voice. Who in those cases did not authorize? Here, the patient herself apparently was compus mentis, aware of her situation and circumstances, and according to the complaint, I realize there may be disputed issues of fact, but that doesn't matter. She said, don't do that. We absolutely accept that's the standard we're dealing with, but, Your Honor, the significance is that part of the elements of establishing a common law battery claim is that there is lack of consent. When you have consent to the relevant procedure, which here was the catheterization procedure, when you have consent to that, then you have component parts, specifically, as Carrie said, for medication, but you also have ancillary things that occur in connection to the larger procedure. That is where you may have a situation such as this one that would be a medical battery if it occurred in connection with the actual procedure, but is not a medical battery when it's considered in light of treatment that is flowing from that procedure. Isn't that position contradicted by Church v. Corrales, which very simply says a competent adult may refuse consent to any procedure? Well, no, it's not, because in the Church case, the court actually found that there was no battery, and the principle, definitely the principle that a competent patient may refuse treatment is the same principle that's set forth in informed consent cases as well as medical battery cases, and that's true, but the predicate is consent to a procedure. I guess that's where my concern is. So you're saying I can agree that I'm going to have a certain kind of surgery, and when I consent to that kind of surgery, I do not then have the right as a competent adult to say to you, but when you perform this surgery, I am allergic to this medication, and I am telling you, Mr. Doctor, you may not give it to me. You do not have consent to inject me with this medicine, and your position is I can't do that? Absolutely not. If that was what was pled, we would be dealing with an unauthorized procedure. We would be dealing with a conditional consent. That's not what was pled here. The plaintiffs have conceded that there was consent, unreserved consent given to the catheterization. They have alleged that she specifically said on more than one occasion, I am allergic to heparin. Do not inject me with heparin. Nurses came in evidently with the needle or the bag, whatever, however it's going to be administered, and she would say, this is the allegation as I understand it, what is that you're giving me? I'm allergic to heparin. Do not give me heparin. How is that not a withdrawal of consent? Well, I'll explain why. She has to say I don't want the catheterization procedure? Yes. She has to roll all the way back and say, I mean. That is precisely what. The patient has the right to refuse medical treatment, but they cannot maintain the continued benefit and unreserved consent that they gave to the underlying procedure that she's hospitalized for. So I'm in the emergency room, and I'm dying, and you want to give me something I'm allergic to, and I want a consent for you to sew me up and save my life, but you're telling me I can't do that? If I sign a consent, then I've got to take the thing that's going to kill me otherwise? I'm lost on the rationality behind that argument. Because it all flows from the original consent, and this statement is. . . This gets back to the point I made earlier. In other words, I think what you're telling me, if I walk into a hospital in Tennessee seeking treatment and get into that bed, no matter how short or prolonged that treatment is until I get better, they can do with me whatever they want because I've agreed to be treated for the condition that has brought me to the hospital. No, they cannot. They cannot. I mean, for example, if someone were to intentionally assault a patient, which is somewhat different principles and has nothing to do with medical treatment, they can't. Plus, if the plaintiff's allegations in this case are true, it would be the easiest medical malpractice case that I have seen in my entire career to establish. There is an easy remedy for this. If there's not a good medical reason and you truly don't have consent to give it, a physician would be foolish, to say the least, to do the things that are alleged in the complaint, and had they simply obtained an expert, they would have an excellent case to pursue. We're not at that position. We are at a motion to dismiss. We are. You can state a claim or she can't state a claim. And that's true. You may be able to raise the expert issue later, but you can't raise it now. But in responding to Judge Carr's question, he said, you're telling us that physicians or caregivers can do whatever they want, and I'm saying no, no, they can't, because there are plenty of things to keep them in check. And, Your Honor, one other point. This case will illustrate the point I'm talking about. I'm saying I'm in for a prolonged stay once I've agreed to be treated for the condition. I either have to repudiate continued treatment entirely, or accept the consequences of the law not allowing me to partially refuse a particular aspect of treatment. Is that correct? Isn't that the situation here? I want the heart catheterization. I need it. By the way, okay, we're going to give you heparin even though you've told us you are allergic to it because you've agreed to the catheterization. There may be no medically feasible alternative. We don't know. That's a matter of question, it seems to me. But it's not. The plaintiffs themselves cited a case, Andrew v. Begley, at page 15 of their brief. A bunch of cases. It's a case from Kentucky. And in that case, the court adopted the reasoning of a Georgia case, Mim v. Boland. And the court set forth a procedure for precisely what I'm talking about. And I'm going to give you a Tennessee case that, frankly, we should have put in our brief and we locate it after filing the brief, that takes that principle and applies it in a situation similar to what we have. Is that a recently decided case or one that's been out there? The Andrew v. Begley. No, the one that you're about to tell us comes from Tennessee that's not in your brief. The one I'm talking about from Tennessee is 1989. What's the name of that? The name of that case is Hartman v. LaCour. L-E-C-O-R-P-S. 1989. Westlaw 115181. And I see that my time is up. If I could just finish the point here. And this is the point. Those cases apply a procedure for when there is an underlying consent to a procedure, to a treatment. And then in the midst of it, the plaintiff, for whatever reason, and they don't have to have a good reason, objects and says, stop, I don't want this, which is essentially what's going on here. And what the courts in those cases said, in which the court in the LaCour case adopted, is the principle that it is the plaintiff's burden to show that not only did I unequivocally, without any doubt whatsoever, withdraw my consent, which in my view is consent to the catheterization, but let's say that it's consent to the administration of heparin. But in addition, it is the plaintiff's burden to demonstrate that there's no medically feasible alternative. That is not pled, it is not alleged, and it is the plaintiff's obligation to do these things. The plaintiff themselves cited in their brief the Sixth Circuit case, which says that you are held to plead the essential elements of your case, and if you have not, then you don't have a case. So with that, I appreciate your Honor's indulgence in allowing me additional time, and I do apologize that we did not cite that case in the brief. We should have, but I hope your Honor will have a chance to look at it. Thank you very much. Are you familiar with the case you just referenced? I'm not, your Honor. Okay. I'm not. I would like to point out that he did mention that we had cited Andrew v. Begley in our brief, and we cited it for the purpose of bringing to the attention that the cause of action of common law battery protects an individual's right to privacy and bodily integrity. It goes along with the principles that were stated in the Church opinion. I believe he stated that he has discussed the withdrawal of consent and that the plaintiff had a burden of showing that there was no feasible alternative. I would wholly disagree with that analysis. Number one, Ms. Shuler never consented to receive heparin. Therefore, there was no consent to withdrawal. From the beginning, and this is, I believe, well, let's just say that it has to be assumed to be true based upon the posture of the case. What about this? I'm not sure that this is, but hypothetically, she agrees to catheterization, she says, but no heparin at some point, okay, whether at the outset. It seems to me it would be a defense to her claim of medical battery for then the care provider to come in and say, well, but we told her that in order to get the treatment that she needs, she would have to have heparin and only heparin. And she said, okay. And then she later said, no, no, don't do that. I mean, it seems to me then the care provider has a defense to the battery on its theory that, look, you consented to, of course, a treatment. But certainly in a patient-doctor relationship, she's not really in a position to gauge. At that point, some notion of informed consent might come in, but it seems to me there's a burden then upon the care provider to say, but we told her that this was what we had to do and we would not go forward with the treatment, would stop where we are now, would sell her back, whatever. I would agree with that. If the defendants in this matter, upon learning of Ms. Shuler's objection and refusal to receive heparin, if the defendants had come to her and stated, we are unable to perform the heart catheterization if you will not consent and allow us to treat you with heparin. And she then consented to undergo the procedure. I agree that would be a defense. Began the treatment, whatever it was. I mean, the heart cath may be a little different. And then all of a sudden, oops, wait a minute, I don't want the heparin. Right, I changed my mind. Correct. I mean, it seems to me then the theory that your opponent is projecting would make a lot more sense, candidly. I would agree. That, however, is not... That's up to them to raise in the course of the case, if it's there. It is, Your Honors. And it has not been pled. It has not been asserted that at any time the defendants in fact told Ms. Shuler that they were unable to perform the heart catheterization without administering heparin to her and that she needed to decide whether or not she would allow them to proceed. That is not the factual situation that has been pled by Ms. Shuler or the defendants in this case. And therefore, I do not believe it to be an applicable analysis or a situation where she has the burden of showing that there was no other reasonable alternative. What about his contention that, if I understand it correctly, it is all the hospital needed was consent to the course of treatment, catheterization, of which this was but a part? I think that's a very scary idea. I think that it violates a lot of fundamental principles of a person's right to control what happens to their body, what happens when they undergo and consent to a medical treatment. A patient should have the right, and I believe that the law in Tennessee supports this position, that a patient has the right to consent to a medical procedure, but to also... And it's actually inherent within the idea of consent. If you have the ability to consent to a general procedure being performed, inherently you have the right to withhold your consent to a specific component of that treatment and or procedure. And unless the defendants can show that they specifically told the patient, we cannot perform this unless you consent to our performing the component that you are objecting to, they have no right to therefore do it without the patient's consent. Thank you. Thank you, Your Honors. We will take the case under advisement.